**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

CHARTER COMMUNICATIONS, INC.,

                                  Petitioner,                    5:21-cv-959 (BKS/ML)

v.

ERIC JEWETT,

                                  Respondent,

and

NEW YORK STATE DIVISION OF HUMAN RIGHTS,

                                  Intervenor.

_____

**Appearances:**

*For Petitioner:*
Daniel P. Jaffe
Husch Blackwell LLP
60 East 42nd Street, Suite 4600
New York, NY 10165

Randall S. Thompson
Husch Blackwell LLP
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105

*Respondent pro se*
Eric Jewett
Watertown, NY 13601

*For Intervenor:*
Erin Sobkowski,
New York State Division of Human Rights
Office of General Counsel
65 Court Street, Suite 506
Buffalo, NY 14202

Robert A. Goldstein
New York State Division of Human Rights
1 Fordham Plaza
4th Floor
Bronx, NY 10458

**Hon. Brenda K. Sannes, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.      INTRODUCTION AND PROCEDURAL HISTORY

Petitioner Charter Communications, Inc. ("Charter"), seeks to compel its former employee, Respondent Eric Jewett, to arbitrate his employment discrimination claims and enjoin him from proceeding before the New York State Division of Human Rights ("NYSDHR" or "Division"). (*See generally* Dkt. No. 1 (Petition to compel arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4)). Presently before the Court are Charter's motions for a temporary restraining order and preliminary injunction under Federal Rule of Civil Procedure 65, (Dkt. Nos. 2–5), enjoining Jewett from "pursuing an October 25, 2021 hearing on the merits of his employment-related claims against Charter, now pending before the [NYSDHR], in any forum outside of arbitration under the Arbitration Agreement," (Dkt. No. 2, at 1; Dkt. Nos. 3–5).

The NYSDHR moved to intervene in this action under Federal Rule of Civil Procedure 24 on the ground that "the public's interest in enforcement of the New York State Human Rights Law, N.Y. Exec. L., Section 290 *et seq.*, cannot be fully represented or protected by respondent Eric Jewett," and the Court granted that motion. (Dkt. No. 18, at 2; Dkt. No. 21 (Text Order granting motion to intervene)). The NYSDHR opposes Charter's motions, (Dkt. Nos. 28–30). On October 6, 2021, the Court held a hearing, via videoconference, on the motions. Jewett appeared at the hearing, but has not taken a position on the pending motions.

2

On October 14, 2021, the Court issued a Text Order denying Charter's motion for a preliminary injunction and advising that a decision would follow. (Dkt. No. 35). This Memorandum-Decision and Order explains the basis for that Text Order.

## II.     FACTS[1]

### A.     Claims of Sexual Harassment and Retaliation

Jewett worked as a sales representative for Charter, a telecommunications company that provides video, internet, and telephone services to business and residential customers, from March 1, 2019 to April 17, 2019. (Dkt. No. 1-4, at ¶ 4). According to the verified complaint filed with the NYSDHR, Jewett alleges that his supervisor sexually harassed him while they were in his supervisor's vehicle making sales calls and again at the office. (Dkt. No. 28-1, at 5). When Jewett contacted human resources, reported the harassment, and stated that he "couldn't handle it anymore working under that supervisor," human resources advised that his claim would be investigated and offered Jewett a position working under "new management." (*Id.*). Jewett responded that the position was "an hour drive from [his] residence" and asked why he "should . . . have to leave [his] area when [he] did nothing wrong?" (*Id.*). When Jewett refused to return to work under the supervisor who had harassed him, Charter advised that he "would be terminated" if he did not return to work. (*Id.*). Jewett's employment was terminated on April 17, 2019. (*Id.* at 2).

### B.     Arbitration Agreement

During his onboarding as a Charter employee, Jewett electronically signed Charter's "Mutual Arbitration Agreement," and agreed to resolve disputes arising out of his employment,

---

[1] The facts are drawn from the Verified Petition and its attached exhibits, the exhibits submitted by the NYSDHR in opposition to the pending motions for injunctive relief, and, in one instance, the declaration the NYSDHR submitted in support of its motion to dismiss, (Dkt. No. 33). (Dkt. Nos. 1, 28, 33-1). The Court will address the NYSDHR's motion to dismiss at a later date.

including claims of unlawful sexual harassment and retaliation through binding arbitration. (Dkt.

No. 1, ¶ 11; Dkt. No. 1-5, at 15–19). The Arbitration Agreement expressly stated that it did not

prevent Jewett from "filing and pursuing" an administrative proceeding before the EEOC "or an

equivalent state or local agency." The Agreement, however, stated: "if you choose to pursue the

claim, any proceeding on the merits or for damages will be subject to arbitration." (Dkt. No. 1-5,

at 16). It provides, in relevant part:

> A. **Arbitration Requirement.** You and Charter mutually agree that, as a condition of Charter considering your application for employment and/or your employment with Charter, any dispute arising out of or relating to your preemployment application and/or employment with Charter or the termination of that relationship, except as specifically excluded below, must be resolved through binding arbitration by a private and neutral arbitrator, to be jointly chosen by you and Charter.
>
> B. **Covered Claims.** You and Charter mutually agree that the following disputes, claims, and controversies (collectively referred to as "covered claims") will be submitted to arbitration in accordance with this Agreement:
>
>> 1. all disputes, claims, and controversies that could be asserted in court or before an administrative agency or for which you or Charter have an alleged cause of action related to pre-employment, employment, employment termination or post-employment-related claims . . . including . . . unlawful discrimination or harassment (including such claims based upon race, color, national origin, sex, pregnancy, age, religion, sexual orientation, disability, and any other prohibited grounds), claims for unlawful retaliation.
>
> . . .
>
> C. **Excluded Claims** . . . . Nothing in this Agreement shall prevent you from filing and pursuing the following: an administrative proceeding before the Equal Employment Opportunity Commission (EEOC) or an equivalent state or local agency (although if you choose to pursue the claim, any proceeding on the merits or for damages will be subject to arbitration).
>
> . . .
>
> E. **Time Limits** . . . . If you file a charge or complaint with an administrative agency or body, any participation by Charter in the proceeding shall not be deemed a waiver of your obligation to arbitrate your claims pursuant to this Agreement. You agree not to assert, and agree to waive, any argument that

Charter's participation in such a proceeding acts as a waiver or modification of the parties' agreement to arbitrate.
. . .

L. **Jury Trial and Litigation Waiver** . . . . Although this Agreement does not preclude either party from filing timely charges with any applicable administrative agency, neither party will ever seek or accept any damages, remedies, or other relief (any right to which is hereby waived) except through the binding arbitration process set forth in this Agreement.

(*Id.* at 15–19).

### C.     Proceedings Before the NYSDHR

On April 23, 2019, Jewett filed a verified complaint with the NYSDHR alleging that he was subjected to sexual harassment during his employment with Charter and that he was terminated in retaliation for complaining about the sexual harassment. (Dkt. No. 1-3, at 9–15). Charter contacted Jewett via letter less than two weeks later "regarding the Charge of Discrimination," reminded Jewett that he was bound by the "Mutual Arbitration Agreement," and advised while the Arbitration Agreement did "not preclude [Jewett's] filing of the instant Charge, any action arising out of the claims made by way of the Charge must go through the arbitration process set forth in the Program." (Dkt. No. 1-6, at 2 (letter dated May 3, 2019)). Charter further advised Jewett that the Arbitration Agreement prohibited him from pursuing his "claims against Charter through a court action" and that they must be resolved through arbitration. (*Id.* at 2–3).

In a letter dated May 23, 2019, Charter provided a "statement of position" to the NYSDHR regarding the allegations contained in Jewett's Charge of Discrimination. (Dkt. No. 1-7, at 2–7). In addition to disputing Jewett's claims of sexual harassment and retaliation, Charter acknowledged that the Arbitration Agreement allowed Jewett's initial filing with the NYSDHR, but asserted that because his claims fell "within the scope of the Arbitration Agreement," "any

proceeding on the merits or for damages is subject to arbitration," and it intended "to fully assert its rights under the Arbitration Agreement." (*Id.* at 3).

On October 15, 2019, the NYSDHR issued a Determination After Investigation finding that "probable cause exists to believe that [Charter] has engaged in . . . the unlawful discriminatory practice complained of," and recommended the matter for public hearing. (Dkt. No. 28-2, at 1).

In a letter dated September 23, 2020, Charter again notified Jewett that "the claims asserted in" the matter pending before the NYSDHR "are subject to mandatory arbitration," and that by entering the Arbitration Agreement, Jewett "waived any right to a public hearing before a NYDHR Administrative Law Judge" and was prohibited from "seek[ing] or accept[ing] any damages, remedies, or other relief . . . except through the binding arbitration process set forth in" the Arbitration Agreement. (Dkt. No. 1-8, at 1–2). Charter told Jewett that he "must dismiss [his] NY[S]DHR complaint against Charter." (*Id.* at 2.). Charter requested that Jewett "notify [Charter's counsel] in writing of whether [he would] voluntarily withdraw [his] complaint filed with the NY[S]DHR" and warned that if he did not, Charter would "proceed with taking the necessary steps to enjoin [him] from proceeding with the NY[S]DHR public hearing [and] compel arbitration." (*Id.* at 3). There is nothing in the record that suggests that Jewett responded to Charter's letter.

On January 11, 2021, an attorney from the NYSDHR Prosecutions Unit was assigned to Jewett's complaint. (Dkt. No. 28, ¶ 28). On January 22, 2021, the NYSDHR Chief Administrative Law Judge notified the parties, including Jewett, Charter, the NYSDHR Prosecutions Unit, and the assigned NYSDHR attorney that the matter had been scheduled for a preliminary conference, and directed the parties to exchange, inter alia, statements of the issues,

descriptions of exhibits, and a list of proposed witnesses. (Dkt. No. 28-3, at 1–3 (citing 9 N.Y.C.R.R. § 465.12)). "A preliminary conference was held on April 5, 2021 before a NYSDHR administrative law judge." (Dkt. No. 28, ¶ 29; Dkt. No. 28-3). On April 8, 2021, the NYSDHR Chief Administrative Law Judge issued a notice setting the matter of "Eric M. Jewett v. Charter Communications, LLC" for a public hearing on July 7–8, 2021. (*Id.* ¶ 30; Dkt. No. 28-4). Charter requested an adjournment on April 13, 2021, because two of its witnesses were unavailable. (Dkt. No. 28-5, at 1). The Chief Administrative Law Judge granted Charter's request and adjourned the public hearing to October 25–26, 2021. (Dkt. No. 28, ¶ 33). A public hearing was held and completed on October 25, 2021. (Dkt. No. 36).

## III.    STANDARD OF REVIEW

The standard for issuance of a temporary restraining order is the same as the standard for a preliminary injunction. *Fairfield Cty. Med. Ass'n v. United Healthcare of New Eng.*, 985 F. Supp. 2d 262, 270 (D. Conn. 2013), *aff'd*, 557 F. App'x 53 (2d Cir. 2014). "A party seeking a preliminary injunction must show (1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public interest." *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018). However, where a party "seeks a preliminary injunction that will affect government action taken in the public interest pursuant to a statutory or regulatory scheme, the injunction should be granted only if the moving party meets the more rigorous likelihood of success standard." *Sussman v. Crawford*, 488 F.3d 136, 140 (2d Cir. 2007); *see Otoe-Missouria Tribe of Indians v. N.Y. State Dep't of Fin. Servs.*, 769 F.3d 105, 110 (2d Cir. 2014) (explaining that "governmental policies implemented through legislation or regulations developed through presumptively reasoned democratic processes are entitled to a higher degree of deference and should not be enjoined lightly") (citation omitted).

To show a "likelihood of success" the petitioner "must establish a clear or substantial likelihood of success on the merits." *Sussman*, 488 F.3d at 140 (citation omitted).

The NYSDHR asserts that the likelihood of success standard applies because the effect of the injunction would be to "enjoin the NYSDHR from proceeding on the merits of a complaint in which it has determined there is probable cause to believe unlawful discrimination occurred." (Dkt. No. 29, at 6). Charter argues that this heightened standard does not apply because Charter "is not challenging 'government action,' as NYSDHR's cause of action is not at issue here." (Dkt. No. 31, at 13). However, because the requested injunction would effectively preclude the NYSHDR from proceeding with the public hearing provided for under New York law, in accord with its mission to eliminate discrimination in employment, *see*, *e.g.*, N.Y. Exec. Law § 297(4)(a) (providing that if the NYSDHR finds probable cause to believe the respondent engaged in an unlawful discriminatory practice, and a conciliation agreement has not been reached, the NYSDHR "shall . . . require[e] the respondent . . . to answer the charges of such complaint and appear at a public hearing"), the Court applies the likelihood of success standard. *See Plaza Health Labs., Inc. v. Perales*, 878 F.2d 577, 580–81 (2d Cir. 1989) (applying likelihood of success standard to injunction seeking to enjoin a state agency's suspension of a Medicaid provider because "it is plain" that the agency's suspension of a provider from Medicaid is "in pursuit of the public interest and in accord with the regulatory scheme").[2]

---

[2] Even if the less rigorous "sufficiently serious questions going to the merits to make them a fair ground for litigation," standard were applicable, in the absence of any legal authority that would support a conclusion that Charter is entitled to relief that would effectively prevent the NYSDHR from proceeding with the public hearing, Charter's motion would fail.

## IV.    DISCUSSION

### A.    Likelihood of Success

Charter argues that the Arbitration Agreement is valid and enforceable, that Jewett's sexual harassment and retaliation claims against Charter fall within its scope, and that the Arbitration Agreement therefore prohibits Jewett from pursuing these claims through the NYSDHR's public hearing process. (Dkt. No. 6, at 6–8). The NYSDHR argues that an order enjoining Jewett from pursing the public hearing would "interfere with [its] independent statutory authority to enforce the New York State Human Rights Law." (Dkt. No. 29, at 2). Having carefully reviewed the record as well as the FAA, relevant case law, and the Human Rights Law and its supporting regulations, the Court finds that an order enjoining Jewett would likely interfere with the independent statutory authority of the NYSDHR, a nonparty to the Arbitration Agreement, and that Charter is therefore unlikely to succeed on the merits.

### 1.    The Federal Arbitration Act

"[T]he Federal Arbitration Act (FAA or Act), 9 U.S.C. § 1 *et seq.* . . . establishes a national policy favoring arbitration when the parties contract for that mode of dispute resolution." *Preston v. Ferrer*, 552 U.S. 346, 349 (2008). The FAA states, in relevant part, that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy . . . arising out of such contract [or] transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. With limited exception, "[e]mployment contracts . . . are covered by the FAA." *E.E.O.C. v. Waffle House*, 534 U.S. 279, 289 (2002).

"The FAA provides . . . for orders compelling arbitration when one party has failed or refused to comply with an arbitration agreement." *Waffle House*, 534 U.S. at 289 (citing 9 U.S.C. §§ 3 and 4). The Supreme Court has read the provisions of the FAA "to 'manifest a liberal

federal policy favoring arbitration agreements.'" *Id.* (quoting *Gilmer*, 500 U.S. at 25) (internal quotation marks omitted). "[T]he language of the contract . . . defines the scope of disputes subject to arbitration." *Id.* However, "[t]he FAA does not mention enforcement by public agencies; it ensures the enforceability of private agreements to arbitrate, but otherwise does not purport to place any restriction on a nonparty's choice of a judicial forum." *Id.* at 298; *see also id.* at 293 ("The FAA directs courts to place arbitration agreements on equal footing with other contracts, but it 'does not require parties to arbitrate when they have not agreed to do so.'" (quoting *Volt Info. Sci., Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989))). Moreover, as the Supreme Court has observed, "[i]t goes without saying that a contract cannot bind a nonparty." *Waffle House*, 534 U.S. at 294. For this reason, "the proarbitration policy goals of the FAA do not require [a state agency] to relinquish its statutory authority if it has not agreed to do so." *Id.*

It is undisputed that Jewett's sexual harassment and retaliation claims fall within the scope of disputes he and Charter agreed to arbitrate, (Dkt. No. 1-1, at 1) (providing that all claims of "unlawful . . . harassment (including such claims based upon . . . sex . . . ), [and] claims for unlawful retaliation" "will be submitted to" and "must be resolved through binding arbitration.")); *see Waffle House*, 534 U.S. at 294 (determining the scope of an arbitration agreement requires courts to "look first to whether the parties agreed to arbitrate a dispute"). And the Arbitration Agreement did not "prevent" Jewett "from filing and pursuing . . . an administrative proceeding before the [EEOC] or an equivalent state or local agency," (Dkt. No. 1-1, at 1): Charter has not objected to Jewett's filing of a complaint with the NYSDHR alleging sexual harassment and retaliation. It is the Arbitration Agreement's purported limitation on the extent to which state agency claims may be pursued, (*see id.* at 2 ("[I]f you choose to pursue the

claim, any proceeding on the merits or for damages will be subject to arbitration.")),[3] that Charter argues Jewett has violated "[b]y participating in a public hearing on the merits" of his NYSDHR complaint. (Dkt. No. 6, at 5). The NYSDHR responds that because, unlike Jewett, it is not a party to the Arbitration Agreement and it is statutorily authorized to prosecute employee-filed complaints of employment discrimination, it is unlikely that Charter will succeed in showing that the Arbitration Agreement, or the FAA, bars the NYSDHR from pursuing Jewett's complaint in a public hearing. (Dkt. No. 29, at 6–9).

        **2.**        **Relevant Caselaw**

In support of their positions, the NYSDHR and Charter rely on two Supreme Court cases, *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279 (2002) and *Preston v. Ferrer*, 552 U.S. 346 (2008). In addition, the parties extensively cite *Charter Communications, Inc. v. Derfert*, a factually identical case, involving the same petitioner and the same arbitration agreement, where the Western District declined to issue an injunction enjoining an employee from proceeding before the NYSDHR. 510 F. Supp. 3d 8 (W.D.N.Y. 2021), *reconsideration denied*, No. 20-cv-915, 2021 WL 949391, 2021 U.S. Dist. LEXIS 47241 (W.D.N.Y. Mar. 12, 2021).

        **a.**        ***E.E.O.C. v. Waffle House***

At issue in *E.E.O.C. v. Waffle House* was whether an arbitration agreement between Waffle House and its employee, who had filed a charge of discrimination with the EEOC, barred the EEOC from pursuing victim-specific relief though an enforcement action against Waffle House in Federal District Court. 534 U.S. at 282–85. The Supreme Court concluded that because the EEOC was not a party to, or bound by, the arbitration agreement, *see Waffle House*, 534 U.S.

---

[3] Neither the provision allowing the "filing and pursuing" of state agency claims, nor the provision limiting the pursuit of such claims, specifies how far Jewett can proceed before the NYSDHR without violating the Arbitration Agreement. This is immaterial to the resolution of the present motion, however.

at 294 (noting that "[n]o one asserts that the EEOC is a party to the contract, or that it agreed to arbitrate its claims" and that "[i]t goes without saying that a contract cannot bind a nonparty"), and was statutorily authorized, under Title VII, to "bring suit to enjoin an employer from engaging in unlawful employment practices," *id.* at 287, 291–92, it was not barred, by the FAA's pro-arbitration policies or otherwise, from pursuing relief against Waffle House in an enforcement action, *see id.* at 293 (explaining that while the policy goals of the FAA favor arbitration the FAA "does not require parties to arbitrate when they have not agreed to do so" (quoting *Volt*, 489 U.S. at 478)).

In reaching this conclusion, the Supreme Court surveyed Congress's assignment of authority to the EEOC to enforce Title VII's prohibitions against employment discrimination, explaining that it was at first limited to the authority to "investigate and, if possible, to conciliate charges of discrimination," *Waffle House*, 534 U.S. at 286 (citing *General Tel. Co. of Nw. v. EEOC*, 446 U.S. 318, 325 (1980)), and later included the authority to bring enforcement actions and seek damages as part of "a system in which the EEOC was intended 'to bear the primary burden of litigation,'" (*id.* at 286–87 (quoting *General Telephone*, 446 U.S. at 326)). The Court also observed that it had recognized previously "the difference between the EEOC's enforcement role and an individual employee's private cause of action," *id.* at 287 (citing *Occidental Life Ins. Co. v. EEOC*, 432 U.S. 355, 368 (1977) and *General Telephone*, 446 U.S. 318), explaining that "under the procedural structure" of Title VII, "the EEOC does not function simply as a vehicle for conducting litigation on behalf of parties," but had "independent statutory responsibility to investigate and conciliate claims," *id.* at 287–88 (quoting *Occidental*, 432 U.S. at 368). The Court found nothing in Title VII "suggesting that the existence of an arbitration agreement

between private parties material changes the EEOC's statutory function of the remedies that are otherwise available." *Id.* at 288.

Next, the Supreme Court reviewed the FAA, including its purpose, ("[T]o reverse the longstanding judicial hostility to arbitration agreements"), coverage of employment contracts, and provisions "for stays of proceedings . . . when an issue . . . is referable to arbitration" and "for orders compelling arbitration." *Id.* at 288–89. The Court has "read these provisions to 'manifest a liberal federal policy favoring arbitration agreements.'" *Id.* at 289 (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991)). The Court noted that: [t]he FAA does not mention enforcement by public agencies; it ensures the enforceability of private agreements to arbitrate, but otherwise does not purport to place any restriction on a nonparty's choice of a judicial forum." *Id.*

In determining the specific issue before it—whether the FAA barred the EEOC from pursuing victim-specific relief in an enforcement action—the Supreme Court rejected the Fourth Circuit's evaluation of the "competing policies" of the FAA (favoring arbitration) and the EEOC's statutory authority (vindication of the public interest) as a basis for making that determination, and instead considered the statutory process for prosecuting a claim. *Id.* at 290–92 (noting that the Fourth Circuit had not based its decision "on any language in the text of either the statutes or the arbitration agreement"). The Court explained that under Title VII, the EEOC did not need the employee's consent to prosecute a claim, and that the employee could not dictate the claim for relief:

> once a charge is filed . . . the EEOC is in command of the process. The EEOC has exclusive jurisdiction over the claim for 180 days. During that time, the employee must obtain a right-to-sue letter from the agency before prosecuting the claim. If, however, the EEOC files suit on its own, the employee has no independent cause of action, although the employee may intervene in the EEOC's suit.

*Id.* at 291 (citing 42 U.S.C. § 2000e-5(f)(1)); *see also id.* ("In fact, the EEOC takes the position that it may pursue a claim on the employee's behalf even after the employee has disavowed any desire to seek relief."). Further, it explained, "[t]he statute clearly makes the EEOC the master of its own case and confers on the agency, the authority to evaluate the strength of the public interest at stake." *Id.* at 291. It therefore concluded that if the EEOC determined that "public resources should be committed to the recovery of victim-specific relief," "the statutory text unambiguously authorizes it to proceed in a judicial forum." *Id.* at 291–92. Indeed, the Supreme Court recognized that vindication of the public interest was a driving force in the EEOC's pursuit of an enforcement action, "even when it pursues entirely victim-specific relief," and for that reason found that giving "greater effect to an [arbitration] agreement between private parties that does not even contemplate the EEOC's statutory function" "would undermine the detailed enforcement scheme created by Congress." *Id.* at 296.

### b. *Preston v. Ferrer*

In *Preston v. Ferrer*, the Supreme Court distinguished *Waffle House*, and held the "FAA supersedes state laws lodging primary jurisdiction in [an administrative] forum." 552 U.S. at 359. The Court therefore concluded that the question of whether a contract with an arbitration provision was void under the California Talent Agencies Act ("TAA"), was required to be resolved in an arbitral forum even though the TAA vested primary jurisdiction over such disputes with the California Labor Commissioner. *Id.* at 350, 356, 359. The Court explained that unlike the EEOC in *Waffle House*, which undertook the role of prosecutor and "pursu[ed] an enforcement action in its own name," "the Labor Commissioner functions not as an advocate advancing a cause before a tribunal authorized to find the facts and apply the law' instead the

14

Commissioner serves as an impartial arbiter"—"a role . . . the FAA-governed agreement between [the parties] reserves for the arbitrator." *Id.* at 359.

### c.  *Charter Communications, Inc. v. Derfert*

In *Charter Communications, Inc. v. Derfert*, the court found that Charter failed to show a likelihood of success with respect to its motion to enjoin Derfert from pursuing her employment discrimination claims, which were scheduled for a public hearing before the NYSDHR, "in any forum outside or arbitration under the Agreement." 510 F. Supp. 3d 8, 12 (W.D.N.Y. 2021). After reviewing, inter alia, *Waffle House* and *Preston*, the court concluded because the NYSDHR "performs both prosecutorial and adjudicative functions" it was unlike the EEOC in *Waffle House*, which "was acting solely as an advocate before an independent tribunal," and the Labor Commissioner in *Preston*, which "functioned solely as an impartial adjudicator." *Id.* at 16. The Court concluded that *Waffle House* was the more analogous of the two cases. *Id.* It found the fact that "an NYSDHR administrative law judge becomes involved and performs an adjudicative role" at the public hearing stage did not, "by itself, transform NYSDHR into a mere 'alternative forum' for resolving an employment-discrimination dispute." *Id.* It explained that even at the public hearing stage, the NYSDHR "continues to prosecute the claim before the administrative law judge," and that its statutory purpose in prosecuting the case "is to rectify violations of New York's Human Rights Law and vindicate the public interest in preventing discrimination." *Id.* (citing N.Y. Exec Law § 290(3)).[4]

---

[4] Charter takes issue with, among other things, the *Derfert* court's reliance on the "command of the process" language the Supreme Court used in *Waffle House* and argues that the *Derfert* court "misplaced its focus" on whether the NYSDHR's purpose was to "vindicate the public interest in preventing discrimination." (Dkt. No. 6, at 20–21). The Court need not address these or Charter's other arguments concerning *Derfert* because it is guided principally by *Waffle House*, *Preston*, and the NYSDHR process outlined in the Human Rights Law in determining whether Charter has shown a likelihood of success, and cites *Derfert* as a case that has reached the same conclusion.

### 3.    New York State Human Rights Law and the NYSDHR

In recognition of New York's "responsibility to act to assure that every individual within

this state is afforded an equal opportunity to enjoy a full and productive life and that the failure

to provide such equal opportunity . . . because of discrimination, prejudice, [or] intolerance . . .

not only threatens the rights and proper privileges of its inhabitants but menaces the institutions

and foundation of a free democratic state," the New York legislature created the Division of

Human Rights to, inter alia, "eliminate and prevent discrimination in employment," and gave it

"general jurisdiction and power for such purposes." N.Y. Exec. Law §§ 290(3), 293. The

NYSDHR is not only empowered to "receive, investigate and pass upon complaints" individuals

have filed with the Division alleging employment discrimination, but also, "[u]pon its own

motion, to test and investigate and to make, sign and file complaints alleging" employment

discrimination. N.Y. Exec. Law § 295(6)(a),(b). Whether a complaint is filed by an individual or

the Division, it is "filed in the name of [the] NYSDHR." (Dkt. No. 28, ¶ 17). Both the NYSDHR

and the complainant "have the power [to] . . . amend the complaint." 9 N.Y.C.R.R. § 465.4(a).

According to Erin Sobkowski, a Senior Attorney in the General Counsel's Office of the

NYSDHR, the United States Equal Employment Opportunity Commission ("EEOC"), which is

responsible for, among other things, the enforcement of Title VII's prohibition against

employment discrimination, and the NYSDHR share "the same jurisdiction . . . over employment

discrimination in New York State." (Dkt. No. 28, ¶ 12–13 (citing 42 U.S.C. § 2000e-8(b)).[5] "In

furtherance of the goal of joint enforcement, the EEOC has, for decades entered into . . .

---

[5] Congress structured Title VII to foster "cooperation between federal and state enforcement authorities." *New York Gaslight Club, Inc. v. Casey*, 447 U.S. 54, 62 (1980); *see* 42 U.S.C. § 2000e-5(c), 2000e-8(b). To this end, the EEOC defers federal administrative or judicial action on any complaint "until the state proceedings have ended or at least sixty days after the appropriate state remedy has been invoked before bringing an action." *E.E.O.C. v. Safeguard Chem. Corp.*, 166 F. Supp. 2d 810, 812 (S.D.N.Y. 2001) (citing 42 U.S.C. § 2000e–5(c)); *Kremer v. Chemical Constr. Co.*, 456 U.S. 461, 469 (1982)).

16

worksharing agreements with state and local fair employment practices agencies, including NYSDHR." (*Id.* ¶ 14). The worksharing agreement with the EEOC authorizes the NYSDHR "to act as the EEOC's agent," and can "receive and investigate claims that raise violations of anti-discrimination claims under federal law." (*Id.*). If the NYSDHR receives a complaint that, like Jewett's, "raises discrimination claims under federal law, the complaint is 'dual-filed,' and assigned both a federal and state charge number." (*Id.*; Dkt. No. 28-1, at 1 (Jewett's NYSDHR Verified Complaint containing State and Federal charge numbers)).[6]

Once a complaint has been filed, the NYSDHR has at least three initial tasks. First, it must "promptly serve a copy" of the complaint "on the respondent and all persons it deems to be necessary parties." N.Y. Exec. Law § 297(2)(a). Second, the NYSDHR must investigate the "allegations of the complaint," 9 N.Y.C.R.R. § 465.6(a), "by field visit, written or oral inquiry, conference, or any other method," *id.* § 465.6(b). Third, the NYSDHR must determine . . . whether there is probable cause to believe that the person named in the complaint . . . has engaged in . . . an unlawful discriminatory practice." N.Y. Exec. Law § 297(2)(a). If the NYSDHR "finds, either on the face of the complaint or after investigation," that "probable cause does not exist," it must dismiss the complaint. 9 N.Y.C.R.R. § 465.5(d); N.Y. Exec. Law § 297(2)(a).

Of the more than 6,000 complaints the NYSDHR receives annually, "approximately 12–20% . . . are issued a probable cause determination" and noticed for a public hearing, (Dkt. No. 33-1, ¶ 9). *See* N.Y. Exec. Law § 297(4)(a) (providing that if the NYSDHR finds probable cause to believe the respondent engaged in an unlawful discriminatory practice, and a conciliation

---

[6] "The EEOC compensates NYSDHR for each dual filed complaint that NYSDHR intakes and resolves." (Dkt. No. 28, ¶ 15).

agreement has not been reached, the NYSDHR "shall . . . require[e] the respondent . . . to answer

the charges of such complaint and appear at a public hearing"); *see also* N.Y. Exec. Law §

297(3)(a) (providing that if, in its "judgment . . . the circumstances so warrant," the NYSDHR

"may, at any time after the filing of the complaint, endeavor to eliminate [the respondent's]

unlawful discriminatory practice" through conciliation and that the terms of any conciliation

agreement must be agreed to by "the division, the complainant, and the respondent").

Before a notice of public hearing is issued, a complainant may withdraw a complaint "at

any time." The withdrawal of a complaint, however, "does not preclude the division from filing a

complaint on its own motion based on the same facts." 9 N.Y.C.R.R. § 465.5(a). Once the

NYSDHR has issued a hearing notice, a complainant loses the ability to unilaterally withdraw a

complaint and must obtain the consent of the commissioner of the NYSDHR to do so. 9

N.Y.C.R.R. ¶ 465.5(c)(1). At oral argument, Ms. Sobkowski represented that the NYSDHR

always grants such requests.

An administrative law judge presides over the public hearing and, in general, a NYSDHR

attorney will present "[t]he case in support of the complaint." 9 N.Y.C.R.R. § 465.12(d)(1); N.Y.

Exec. Law § 297(4)(a). The NYSDHR has a "Prosecutions Unit, comprised of approximately 10

. . . attorneys," who are responsible for the litigation and presentation of complaints at public

hearings. (Dkt. No. 33-1, ¶ 10). However, if the NYSDHR consents, "the case in support of the

complainant may be presented solely by his or her attorney" at the public hearing. N.Y. Exec.

Law § 297(4)(a). But even when a complainant has private counsel, NYSDHR attorneys retain

certain responsibilities: the NYSDHR attorney must "prepare and submit to the administrative

law judge . . . a statement in lieu of appearance," 9 N.Y.C.R.R. § 465.13(d)(2); may still be

required to appear at the hearing if, for instance, "the administrative law judge . . . request[s] the

appearance of the division attorney," *id.* § 465.13(g); and must appear at the hearing if there is "a substantial public interest or an important or novel issue of law," *id.* § 465.13(h)(1).[7] Moreover, the NYSDHR attorney can "*at any time* withdraw the consent to have the case presented solely by the complainant's attorney, and appear at the hearing or submit arguments or briefs." *Id.* § 465.13(h)(3) (emphasis added).

At the public hearing, "[a]ll parties . . . shall be allowed to present testimony in person or by counsel and cross-examine witnesses." 9 N.Y.C.R.R. § 465.12(b)(1). Oral testimony must be given under oath, but the administrative law judge is not "bound by the strict rules of evidence." N.Y. Exec. Law § 297(4)(a).

Following the hearing, the administrative law judge must "prepare a proposed order for the commissioner containing findings of fact and a decision." 9 N.Y.C.R.R. 465.17(c)(1). If the commissioner finds that "a respondent has engaged in any unlawful discriminatory practice," the commissioner "shall . . . serve[] on such respondent an order . . . including such of the following provisions as in the judgment of the [NYSDHR] will effectuate the purposes of the" Human Rights Law: requiring the respondent to cease any unlawful discriminatory practice; reinstatement, with or without backpay; compensatory damages; punitive damages; and civil penalties. N.Y. Exec. Law § 297(c). Finally, while the complainant or respondent may "obtain judicial review" of a final order by the NYSDHR, only the NYSDHR "may obtain an order of court for [the] enforcement" of a final order, including the award of civil fines and penalties. N.Y. Exec. Law § 298.

---

[7] When both an NYSDHR attorney and private counsel appear, "the division attorney and complainant's attorney may agree on the procedure to be followed in the presentation of the case, including joint presentation by such attorneys." 9 N.Y.C.R.R. § 465.13(h)(2).

4.      **Analysis**

Here, the NYSDHR has the statutory authority to enforce the Human Rights Law's prohibition against employment discrimination, N.Y. Exec. Law §§ 290(3), 293, and may file and pursue its own complaint against an employer in a proceeding before the NYSDHR. N.Y. Exec. Law § 295(6)(b).[8] Charter does not dispute that if the NYSDHR had initiated the complaint against it, the Arbitration Agreement would not bar the NYSDHR from exercising its statutory authority to pursue that complaint. (Dkt. No. 31, at 6, 14). Charter argues that because Jewett filed his own complaint, his complaint is like the parties' petition before the Labor Commissioner in *Preston*: it is Jewett's own "individual cause of action that will be presented by the NYSDHR on Mr. Jewett's behalf." (Dkt. No. 31, at 5) (emphasis omitted).  And, since it is Jewett's complaint—not the NYSDHR's—Charter argues that there can be no interference with the NYSDHR's enforcement authority. (Dkt. No. 31, at 13–14).

The text of the statute governing the NYSDHR's obligations in pursuing an employee-filed complaint does not support Charter's argument, (Dkt. No. 6, at 17); it shows that whether the NYSDHR initiates its own action or an employee files a complaint, in pursuing that complaint through the investigation, conciliatory, and public hearing stages, the NYSDHR is acting in its prosecutorial capacity and working in the interest of the state. *Cf., e.g. New York Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 68–70 (1980) (concluding that Title VII prevailing party was entitled to attorney's fees for private counsel's services in employee-initiated

---

[8] The NYSDHR is also vested with adjudicatory authority in the handling of employment discrimination complaints. In *Preston*, the Labor Commissioner, like the NYSDHR, had independent authority to enforce the TAA and adjudicatory authority to resolve disputes arising under the TAA, 552 U.S. at 358–59, but there, the only issue was whether the FAA displaced the Labor Commissioner's primary jurisdiction to adjudicate whether the contract was void under the TAA; that case did not implicate the Labor Commissioner's role as prosecutor, *id.* at 352; *see also id.* at 359 n.7 (noting that "[e]nforcement of the parties' arbitration agreement in this case does not displace any independent authority the Labor Commissioner may have to investigate and rectify violations of the TAA").

NYSDHR proceedings, and rejecting the employer's argument that the presence of a Division attorney should deprive the employee of a fee award), *id.* at 69 (noting that "the assistance provided a complainant by the Division attorney is not fully adequate"; that "at times the position of the Division may be detrimental to the interest of the complainant and to enforcement of federal rights"; and "[i]f a Division attorney appears at the public hearing, he does not represent the interests of the complainant but rather those of the State" (citing inter alia N.Y. Exec. Law §§ 297(3)(c), (4)(a)).

To begin, even if a complaint is filed by an individual, it is captioned in the name of both the NYSDHR and the complainant. (*See e.g.*, Dkt. No. 28-1, at 1 ("New York State Division of Human Rights on the Complaint of Eric. M. Jewett, Complainant.")).[9] The NYSDHR investigates a complaint's allegations and must determine whether there is probable cause to believe the employer engaged in an unlawful discriminatory practice. 9 N.Y.C.R.R. § 465.6(b); N.Y. Exec. Law § 297(2)(b). There is "no provision for the participation of a Division attorney, and the complainant is not represented by a Division attorney at this preliminary stage." *New York Gaslight Club*, 447 U.S. at 68–69. Even if an employee withdrew the complaint, an action

---

[9] The following is the caption of the verified complaint:

NEW YORK STATE
DIVISION OF HUMAN RIGHTS

| | |
|---|---|
| NEW YORK STATE DIVISION OF HUMAN RIGHTS on the Complaint of<br><br>ERIC M. JEWETT,<br><br>                              Complainant,<br><br>                v.<br><br>CHARTER COMMUNICATIONS, INC.,<br><br>                              Respondent. | VERIFIED COMPLAINT<br>Pursuant to Executive Law,<br>Article 15<br><br>Case No.<br>**10201000** |

Federal Charge No. 16GB902992

(Dkt. No. 28-1, at 1).

the employee is free to take prior to a probable cause determination and notice of hearing, the

NYSDHR may still file "a complaint on its own motion based on the same facts." 9 N.Y.C.R.R.

§ 465.5(a)[10]; *cf. Waffle House*, 534 U.S. at 291 ("[T]he EEOC takes the position that it may

pursue a claim on the employee's behalf even after the employee has disavowed any desire to

seek relief.").

The NYSDHR may "at any time after the filing of the complaint, endeavor to eliminate

such unlawful discriminatory practice by . . . conciliation." N.Y. Exec. Law § 297(3)(a).

Conciliation between the parties is supervised by a NYSDHR regional director, who may

overrule a complainant's objections to a proposed conciliation agreement, "issue a recommended

equitable order . . . providing that the respondent will pay the complainant the amount proposed

in the conciliation agreement," and dismiss the complaint on the merits. 9 N.Y.C.R.R. §

465.7(5)(iii); *see New York Gaslight Club*, 447 U.S. at 69 (noting that "[n]o Division attorney

participates in the conciliation efforts on behalf of the complainant, and the Division staff is even

empowered to execute a settlement agreement with the employer over the complainant's

objections" (citing N.Y. Exec. Law § 297(3)(c) (1979)).

Once the NYSDHR has found probable cause and issued a written notice of public

hearing, the complainant can no longer withdraw the complaint without the written consent of

the NYSDHR commissioner.[11] 9 N.Y.C.R.R. § 465.5(a) ("A pending complaint . . . may be

---

[10] In this case the NYSDHR states that it is too late for it to file a complaint on its own motion because the alleged last date of discrimination falls outside the one-year statute of limitations. (Dkt. No. 29, at 22) (citing N.Y. Exec. Law § 295(6)(b)). According to counsel for NYSDHR, the agency "maintains a Division-Initiated Action Unit" that initiates investigations and files complaints pursuant to its authority under N.Y. Exec. Law § 295(6)(b). "This Unit aims to identify and combat the practice of systemic discrimination which have not been brought forward by or fall under the scope of the individual complaint": it files "[f]ewer than 10" complaints each year. (Dkt. No. 33-1, ¶¶ 6–8).

[11]Even if the NYSDHR finds probable cause to believe the employer has engaged in discriminatory practices, if the NYSDHR determines "that noticing the complaint for hearing would be undesirable," it may dismiss the complaint. N.Y. Exec. Law § 297(3)(c).

withdrawn by the complainant at any time before the service of a notice of hearing."); *see Waffle House*, 534 U.S. at 291 (explaining the EEOC "is in command of the process," citing, as an example, the requirement that once a charge of discrimination has been filed, an employee "must obtain a right-to-sue letter from the agency before prosecuting the claim").

In addition, the Human Rights Law vests NYSDHR attorneys with the responsibility for presenting "the case in support of the complaint" at the public hearing. N.Y. Exec. Law § 297(4)(a). Charter asserts that the NYSDHR's involvement at the public hearing stage is to present "Mr. Jewett's own cause of action . . . on Mr. Jewett's behalf," analogizing this case to *Preston*, where "the cause of action set to be heard before the administrative tribunal was the *Preston* defendant's own cause that was subject to" arbitration. (Dkt. No. 31, at 6 (citing *Preston*, 552 U.S. at 349–50)). The Human Rights Law and its regulations, however, do not support Charter's characterization of the NYSDHR's role as solely that of the complainant's representative or the claim pressed at the public hearing as essentially derivative of the complainant's. The regulations explicitly state that there is no "attorney-client relationship" between the NYSDHR attorney and the complainant, 9 N.Y.C.R.R. § 465.13(d)(1), and while the statute provides that a complainant's attorney may present the case in the support of the complaint, the attorney may only do so with the NYSDHR's consent. N.Y. Exec. Law § 297(4)(a). Even when a complainant has private counsel, the NYSDHR attorney retains certain responsibilities: the NYSDHR attorney must "prepare and submit to the administrative law judge . . . a statement in lieu of appearance," 9 N.Y.C.R.R. § 465.13(d)(2), and may still be required to appear at the hearing if, for instance, "the administrative law judge . . . request[s] the appearance of the division attorney," *id.* § 465.13(g), or there is "a substantial public interest or an important or novel issue of law," *id.* § 465.13(h)(1). Further, the NYSDHR attorney can "*at any time*

withdraw the consent to have the case presented solely by the complainant's attorney, and appear at the hearing or submit arguments or briefs." *Id.* § 465.13(h)(3) (emphasis added).

The Human Rights Law and its regulations' provision of authority to the NYSDHR to investigate all complaints of discrimination, regardless of whether initiated by the Division or an employee; settle claims even over a complainant's objection; the requirement that NYSDHR attorneys participate in the public hearing, even when a complainant has private counsel; and the assignment of the ability to enforce, in state court a final order, including the award of civil fines and penalties solely to the NYSDHR, not the complainant, dispels the notion that NYSDHR's interests in prosecuting a complaint filed by an individual through the public hearing stage "is merely derivative" of the individual's interest or claim. *Waffle House*, 534 U.S. at 297; *see also, e.g.*, *New York Gaslight Club*, 447 U.S. at 70 (explaining that "[i]If a Division attorney appears at the public hearing, he does not represent the interests of the complainant, but rather those of the State" and that the Human Rights Law provides only that the Division attorney "presents the 'case in support of the complaint,' not in support of the complainant" (citing N.Y. Exec. Law § 297(4)(a) (1979))).

Therefore, the Court finds that the Arbitration Agreement between Charter and Jewett, is unlikely to be a basis on which to effectively bar the NYSDHR, which is not a party to the Agreement, from acting in accordance with its statutory authority to prosecute the complaint Jewett filed through to a final determination by the Commissioner. *See Derfert*, 2021 WL 949391, at *7, 2021 U.S. Dist. LEXIS 47241, at *21 (denying Charter's motion for reconsideration of the court's denial of its motion for a preliminary injunction, explaining that the arbitration agreement did "not constrain the Division, which has identified [Derfert's] case as one in which probable cause is present and in which it seeks to recover relief, primarily victim-

specific, in order to enforce New York's civil rights laws"); *see also Waffle House*, 534 U.S. at

296 (explaining that to prohibit the EEOC from pursuing victim-specific relief when it has

chosen to bring an enforcement action "would undermine the detailed enforcement scheme

created by Congress simply to give greater effect to an agreement between private parties");

*Ladenburg Thalmann & Co. Inc. v. Matty*, 960 N.Y.S.2d 50 (Sup. Ct. 2012) (finding that the

arbitration agreement between the employer and employee, to which the NYSDHR was not a

party, did not preclude the employee or the NYSDHR from pursuing the employee's complaint

before the NYSDHR, explaining that the NYSDHR "like the EEOC . . . has the authority to

investigate and prosecute discrimination complaints on its own behalf in order to vindicate the

public interest by eliminating discrimination in employment" (citing N.Y. Exec. Law §§ 290,

295)); *Rent-A-Center v. Iowa Civil Rights Com'n*, 843 N.W.2d 727, 737 (Iowa 2014)

(distinguishing *Preston* and finding that a state civil rights agency empowered to pursue

enforcement actions against an employer "is not only a forum. Rather, like the EEOC in *Waffle

House*, it is a public agency acting in its prosecutorial capacity to bring an enforcement action

against RAC, independent of [the employee's] own claims, in order to protect the public interest

under the Iowa Civil Rights Act"). Accordingly, Charter has failed to show a likelihood of

success.

    **B.**    **Irreparable Harm**

    A showing of irreparable harm is "the single most important prerequisite for the issuance

of a preliminary injunction." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118

(2d Cir. 2009) (quoting *Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999)). "Irreparable

harm is 'injury that is neither remote nor speculative, but actual and imminent and that cannot be

remedied by an award of monetary damages.'" *New York ex rel. Schneiderman v. Actavis PLC*,

787 F.3d 638, 660 (2d Cir. 2015) (quoting *Forest City Daly Hous., Inc. v. Town of N.*

*Hempstead*, 175 F.3d 144, 153 (2d Cir. 1999)). "The relevant harm is the harm that (a) occurs to the parties' legal interests and (b) cannot be remedied after a final adjudication, whether by damages or a permanent injunction." *Salinger v. Colting*, 607 F.3d 68, 81 (2d Cir. 2010) (internal footnote omitted).

Charter cites to the caselaw which has "consistently held that '[l]osing the ability to enforce an arbitration agreement is a form of irreparable harm.'" *UBS Sec. LLC v. Prowse*, No. 20-cv-217, 2020 WL 433859, at *7, 2020 U.S. Dist. LEXIS 14042, at *20 (S.D.N.Y. Jan. 27, 2020) (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Seneca Fam. of Agencies*, 255 F. Supp. 3d 480, 490 (S.D.N.Y. 2017)); *see Nat'l Union Fire Ins. Co. v. Advanced Micro Devices, Inc.*, No. 16-cv-5699, 2016 WL 4204066, at *5, 2016 U.S. Dist. LEXIS 102703, at *13 (S.D.N.Y. Aug. 4, 2016) (citing cases).

NYSDHR argues that Charter "fails to specify how it would lose its right to arbitrate," because if there is an enforceable arbitration agreement "Jewett may well be compelled to arbitrate his claims," and *Waffle House* "contemplated parallel proceedings." (Dkt. No. 29, at 20). In response, Charter asserts that there is clearly irreparable harm because the NYSDHR hearing would "resolve" Jewett's claim 'precluding any arbitration"; Jewett "would have no need or incentive to arbitrate"; and parallel proceedings would create a risk of inconsistent results. (Dkt. No. 31, at 8-9).

In any event, even assuming Charter shows irreparable harm, because it fails to demonstrate a likelihood of success, it fails to meet the requirements for the issuance of a preliminary injunction. *Quint v. Lantz*, 248 F. App'x 218, 220 (2d Cir. 2007) (affirming denial of preliminary injunction, explaining that even if the plaintiff "could make a showing of irreparable

harm absent an injunction, he fails to demonstrate a likelihood of success on the merits or sufficiently serious questions going to the merits").

      **C.**      **Balance of the Hardships**

      "[T]he balance of hardships inquiry asks which of the two parties would suffer most grievously if the preliminary injunction motion were wrongly decided." *Goldman, Sachs & Co. v. Golden Empire Schs. Fin. Auth.*, 922 F. Supp. 2d 435, 444 (S.D.N.Y. 2013) (alteration in original) (quoting *Tradescape.com v. Shivaram*, 77 F. Supp. 2d 408, 411 (S.D.N.Y. 1999)). Even assuming that Charter has shown that the balance of the hardships tips in its favor, without a showing of a likelihood of success on the merits, this factor, alone, is insufficient to warrant injunctive relief.[12]

**V.**      **CONCLUSION**

      For these reasons, it is

      **ORDERED** that Petitioner's motion for a temporary restraining order and preliminary injunction (Dkt. Nos. 2, 4) are **DENIED;** and it is further

      **ORDERED** that Petitioner shall file a status report by December 16, 2021, informing the Court how it seeks to proceed in this matter**.**

      **IT IS SO ORDERED.**

Dated: <u>November 16, 2021</u>
       Syracuse, New York

                                Brenda K. Sannes
                                U.S. District Judge

---

[12] Since a preliminary injunction shall not issue in this case, the Court need not consider whether the issuance of an injunction would harm the public interest. *U.S. S.E.C. v. Citigroup Global Mkts. Inc.*, 673 F.3d 158, 163 n.1 (2d Cir. 2012) ("[W]hen a court orders injunctive relief, it should ensure that injunction does not cause harm to the public interest.").